UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

**ROBERT CHARLES PAYNE, JR.**         *         CIVIL ACTION NO. 16-0203

**VERSUS**                            *         MAG. JUDGE KAREN L. HAYES

**SETERUS INC.**                      *

## MEMORANDUM RULING

Before the court is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 8] filed by defendant Seterus, Inc.[1] For reasons explained below, the motion is provisionally GRANTED.

### Background

a)      The Complaint

On February 12, 2016, Robert Payne Jr., filed the instant suit against Seterus, Inc. ("Seterus") for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA"), the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"), and associated regulations. (Compl.). Payne alleges that on September 15, 2014, Seterus notified him that it had become the servicer and debt collector of his mortgage loan with Fannie Mae. *Id*. On an unspecified date thereafter, Payne requested a monthly statement from Seterus, but received no response. *Id*. He then faxed correspondence to Seterus on November 16 and 24, 2015. *Id.* He also uploaded the correspondence to Seterus's website on November 10, 17, 24, and December 2, 2015. *Id.* In addition, on November 24, 2015, Payne sent Seterus a copy of the

---

[1] With the consent of all parties, the District Court referred the above-captioned case to the undersigned magistrate judge for the conduct of all further proceedings and the entry of judgment. 28 U.S.C. § 636(c).

correspondence by certified mail. *Id*. Aside from a payoff statement, Seterus did not respond to Payne's requests for information. *Id*.

Payne contends that all of his communications to Seterus seeking information about his mortgage loan constitute "qualified written requests" under RESPA, thus triggering a five day window for Seterus to provide a written response acknowledging receipt of the correspondence, 12 U.S.C. § 2605(e)(1)(A).

He further alleges that Seterus violated 12 U.S.C. § 2605(k)(1)(C) and 12 C.F.R. § 1026.36 by failing to take timely action to respond to his requests to correct errors relating to the allocation of payments. Seterus's failure to credit Payne's payments also purportedly constitutes a violation of TILA, 15 U.S.C. § 1639f.

Finally, Payne alleges that Seterus failed to provide him with an annual analysis of his escrow account as required by 12 U.S.C. § 2609(c)(2).

For his troubles, Payne seeks "such damages as to which he proves himself justly entitled," pursuant to 15 U.S.C. § 1640 and 12 U.S.C. § 2605(f). He also seeks costs and attorney's fees.

b)      The Motion to Dismiss

Seterus filed the instant Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted on March 21, 2016. Seterus argues that it *did* respond to Payne's requests for information. However, rather than send the responses, including an escrow account statement, directly to Payne, Seterus opted to send them to Payne's then bankruptcy attorney, E. Orum Young.[2] In support of its motion, Seterus submitted copies of Payne's letters and

---

[2] Seterus adduced a docket sheet from Payne's Chapter 13 bankruptcy petition, *In Re: Robert Charles Payne*, No. 09-32782 (Bankr. W.D. La.). (M/Dismiss, Exh. 1). The docket sheet shows that Payne filed the petition in 2009, that the debt was discharged on September 21, 2015,

Seterus's responses that it sent to Payne's attorney. Seterus contends that its evidence conclusively demonstrates compliance with its RESPA obligations. Seterus further argues that the complaint fails to allege facts to support any cognizable claim for damages as a result of the alleged RESPA and TILA violations.

On April 13, 2016, plaintiff filed his out-of-time opposition to the motion to dismiss.[3] [doc. # 11]. He maintained that under 12 U.S.C. § 2605(e)(2), Seterus was required to provide the requested information directly to him as the borrower – not his bankruptcy attorney. He stressed that 12 U.S.C. § 2605(e)(2) does not exempt servicers from responding to discharged Chapter 13 debtors whose cases have yet to be closed.

Plaintiff also adduced a copy of a monthly account statement dated March 16, 2016, which Seterus transmitted to plaintiff's current counsel. (Pl. Opp. Memo., Exh. A). The statement shows past due payment(s) of $2,796.53 and a suspense credit of $3,545.40. *Id*. Plaintiff argues
that the statement supports his claims that Seterus did not promptly credit payments on his mortgage loan as required by 15 U.S.C. § 1639f and 12 C.F.R. § 1026.36.

---

and that a final decree closing the case issued on January 22, 2016. *Id*. The court may take judicial notice of, and therefore consider the bankruptcy records attached to the motion to dismiss. *Cargo v. Kansas City Southern Ry. Co.*, 408 B.R. 631, 640 (W. D. La. 2009) (citations omitted).

[3] Seterus urges the court not to consider plaintiff's opposition because it was untimely. *See* Def. Reply Memo. Plaintiff's response was due on April 12, 2016 – 21 days after the notice of motion setting. (Notice of Motion Setting [doc. # 9]). He filed his opposition one day late – on April 13. District courts, however, enjoy broad discretion to determine whether to consider an untimely submission. *Nelson v. Star Enterprise*, 220 F.3d 587, 2000 WL 960513 at *1 (5th Cir. 2000) (citing *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995) and *Lowndes v. Global Marine Drilling Co.*, 909 F.2d 818 (5th Cir. 1990)). Moreover, Seterus has not demonstrated any cognizable prejudice as a result of the brief delay. Thus, the court will excuse the dilatory filing and give effect to plaintiff's brief.

Seterus filed its reply brief on April 25, 2016. (Def. Reply [doc. # 16]). In addition to reemphasizing its original arguments, it further noted that the March 2016 billing statement submitted by plaintiff did not establish that the statement conveyed any incorrect information. Specifically, plaintiff did not allege the date or amount of any payments that Seterus failed to credit. Briefing is complete; the matter is ripe.

## Analysis

### I.  Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is

improbable, and that recovery is unlikely. *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records.

*Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

## II.     RESPA Claim for Failure to Respond

Payne alleges that Seterus violated RESPA by failing to respond to his "qualified written requests." Pursuant to RESPA, a loan servicer is required to respond within certain deadlines to a borrower's "qualified written request" ("QWR"). *See* 12 U.S.C. § 2605(e); *Akintunji v. Chase Home Fin., L.L.C.*, 2011 WL 2470709, at *2 (S.D. Tex. June 20, 2011).[4] Furthermore, "[a] servicer of a federally related mortgage shall not fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(c).

Upon receipt of a QWR, RESPA obliges the servicer to respond substantively, as follows,

> (2) Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

---

[4] For purposes of RESPA, a QWR is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that identifies, specifically or in a manner that enables the loan servicer to identify, the name and account at issue, and that "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *See* 12 U.S.C. § 2605(e)(1)(B); *Akintunji*, 2011 WL 2470709 *2.

>    (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
>    (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>    (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>
>    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
>    (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>    (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
>    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

In order to survive a motion to dismiss, a RESPA failure to respond claim must include factual allegations to plausibly show that 1) defendant is a loan servicer; 2) defendant received a QWR from plaintiff; 3) the QWR relates to servicing of a mortgage loan; 4) defendant failed to respond adequately; and 5) plaintiff is entitled to actual or statutory damages. *Hudgins v. Seterus, Inc.*, Civ. Action No. 16-80338, 2016 WL 3636859, at *3 (S.D. Fla. June 28, 2016) (and cases cited therein). Here, Seterus challenges the fourth and fifth elements of plaintiff's claim. The court addresses each argument, in turn.

    a)    <u>Sufficiency of Seterus's Responses</u>

As an initial matter, Seterus's argument that it responded to plaintiff's QWRs necessarily relies upon extrinsic evidence attached to its motion to dismiss. However, plaintiff did not refer

to these responses in his complaint, and defendant does not provide any other basis for the court to consider this evidence in the context of the present 12(b)(6) motion. Of course, if evidence outside the pleadings is presented to, *and not excluded by the court*, then the court must convert the motion into a motion for summary judgment under Rule 56. FED. R. CIV. P. 12(d).

Here, the court declines to consider the extrinsic evidence. While this has the effect of undermining one of the grounds for defendant's motion, it preserves the Rule 12(b)(6) framework for disposition of the motion. *See In re Thomas*, No. 15-30401, 2016 WL 4199561, at *3 (Bankr. M.D. Ala. Aug. 5, 2016) (declining to consider creditor's letter to plaintiff's bankruptcy attorney that was attached to creditor's motion to dismiss). Regardless, as discussed below, the same result obtains even if the court *were* to consider the evidence.

Seterus maintains that it timely responded to plaintiff's QWRs via correspondence transmitted to his bankruptcy counsel. Seterus acknowledged receipt of plaintiff's requests and responded on December 16, 2015:

> Mr. Payne and Ms. Gatewood have requested that monthly Account Statements be sent to them directly as well as update the information reported to the credit agencies, as they have received a discharge of the Chapter 13 Bankruptcy.
>
> As our records indicate the Bankruptcy has been discharged and not yet terminated, we must decline the requests of Mr. Payne and Ms. Gatewood. At this time, the loan is contractually due for the November 1 and December 1, 2015 Installments, each in the amount of $932.87.

[doc. # 8-18; *see also* docs. # 8-7 through 8-16].

Seterus does not argue any other reason beyond the bankruptcy proceeding to justify its refusal to transmit its responses directly to Payne.

Conversely, plaintiff argues that "[t]here is no exception in the statute exempting discharged Chapter 13 debtors whose cases have not yet been closed from the requirements of

8

responding to QWRs."[5] It is axiomatic that when a debtor files a bankruptcy petition, an automatic stay is triggered that freezes virtually all debt collection efforts. 11 U.S.C. § 362(a). Its purpose is to enjoin all creditors from taking action against the debtor and the estate so that the debtor may have some breathing room to propose and obtain confirmation of a plan of reorganization which will pay creditors. *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005). Should the automatic stay be violated, Congress has provided a debtor with a private right of action for any "willful violation." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008).

Courts are divided as to whether RESPA is preempted by the Bankruptcy Code. *See, e.g.*, *In re Figard*, 382 B.R. 695, 2008 WL 501356 (Bankr. W.D. Pa. 2008) (court finds that Bankruptcy Code does not preempt provisions of RESPA, 12 U.S.C. § 2605(e)(2)); *In re*

---

[5] As other courts have noted, the issue of whether correspondence between parties and opposing counsel satisfies the requirements of 12 U.S.C. § 2605 is not well settled. *See McLean v. GMAC Mortgage Corp.*, 2008 WL 5246149, at *5 (S.D. Fla. Dec. 16, 2008) (discussing cases concerning a debtor sending QWRs to servicer's counsel); *see also In re Holland*, 2008 WL 4809493 (Bkrtcy. D. Mass. Oct.30, 2008).

Assuming that Seterus's responses to plaintiff's QWRs were sent by counsel for Seterus, then plaintiff's bankruptcy attorney arguably would have been the proper recipient, and not plaintiff. The Rules of Professional Conduct promulgated by the Louisiana State Bar Association provide the rules of conduct for attorneys practicing before this court. L.R. 83.2.4. Rule 4.2 of the Rules of Professional Conduct provides,

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. A lawyer shall not effect the prohibited communication through a third person, including the lawyer's client.

Here, however, there is no indication that Seterus's counsel responded to the QWRs rather than some other representative of Seterus, that Plaintiff was communicating with Seterus on behalf of his lawyer or about the subject of the representation, or even that Seterus was represented. In any event, the better practice would have been for Seterus to respond to plaintiff's QWRs directly, even if its response was simply to let him know that it would need to provide the information to his bankruptcy attorney.

*Holland*, 374 B.R. 409 (Bankr. D. Mass. 2007) (Bankruptcy Code does not preempt RESPA); *In re Nosek*, 354 B.R. 331 (D. Mass. 2006) (court finds Bankruptcy Code preempts RESPA and state statutory and common law).

However, even if the Bankruptcy Code's automatic stay were to trump the response procedures under RESPA, defendant does not provide any support for the proposition that servicers may not respond to inquiries initiated by debtors. *In re Henry*, 266 B.R. 457, 473 (Bankr. C.D. Cal. 2001) (creditor may properly respond to communication initiated by the debtor). Seterus did not provide the information requested by Payne or otherwise explain why the monthly statements requested were either unavailable or unobtainable. *See* 12 U.S.C. § 2605(e)(2). Instead, Seterus cites the pending bankruptcy proceeding with no explanation as to why the proceeding would bar it from providing the requested information. Moreover, the pending bankruptcy proceeding apparently did not impede Seterus from directly notifying Payne that it had become the servicer and debt collector on his mortgage. *See* Compl., ¶ 2.

In sum, even if the court were to consider the evidence adduced by Seterus, it does not establish that Seterus responded adequately to plaintiff's requests. Rather, plaintiff has alleged sufficient facts to support this element of his claim for violation of 12 U.S.C. § 2605(e)(2).

      b)     <u>Damages</u>

           1)     *Actual Damages*

Section 2605(f) imposes liability for "any actual damages to the borrower as a result of the [RESPA violation]." 12 U.S.C. § 2605(f)(1)(A). The burden is on the borrower to prove that he or she incurred actual damages in order to substantiate a RESPA claim. *See Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 836 (5th Cir. 2014) ("To recover, a claimant must show that actual damages resulted from a RESPA violation."); *see Caballero v. Wells*

*Fargo Bank, N.A.*, 2011 WL 6039953, at *2 (N.D. Tex. July 25, 2011); *Ricotta v. Ocwen Loan Servicing, LLC*, 2008 WL 516674, at *5 (D. Colo. Feb. 22, 2008). The statute neither defines "actual damages" nor gives examples of what constitutes actual damages. Thus the court "look[s] to the plain meaning of the term." *Hernandez v. U.S. Bank, N.A.*, 2013 WL 6840022, at *5 (N.D. Tex. Dec. 27, 2013) (O'Connor, J.) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). "The term 'actual damages' is synonymous with 'compensatory damages,' which is defined as 'such [damages] as will compensate the injured party for the injury sustained, and nothing more[.]'" *Hernandez*, 2013 WL 6840022, at *5 (quoting Black's Law Dictionary at 390 (6th ed. 1990)).

In order to establish actual damages under RESPA, a plaintiff must demonstrate that defendant's breach proximately caused the alleged damages. "While courts have interpreted this requirement liberally, the loss alleged must be related to the RESPA violation itself." *Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 788 (S.D. Miss. April 11, 2014) (quoting *Hensley v. Bank of New York Mellon*, 2011 WL 4084253, at *3-4 (E.D. Cal. Sept. 13, 2011).

In his opposition brief, plaintiff argues that, as a result of defendant's failure to respond to his QWRs, defendant reported delinquent payments to credit bureaus that possibly damaged his credit score. (Pl. Opp. Memo., pgs. 2-3). Yet even assuming that "possible" damage to a credit score is sufficient, there is nothing in the complaint or in plaintiff's opposition that links the alleged damage to defendant's alleged violation of RESPA. *See Durland v. Fieldstone Mortgage Co.*, 2011 WL 805924, at *3 (S.D. Cal. Mar. 1, 2011) (mere allegations of damages, including fees assessed, negative credit reporting, and emotional distress, were insufficient to establish a causal link between the alleged RESPA violations and plaintiff's claimed damages).

Plaintiff fails to indicate how the inadequate response to the QWRs caused the reduction

11

in his credit rating, and fails to allege damage caused by the alleged reduction in his credit rating. *See Anokhin v. BAC Home Loan Servicing, LP*, 2010 WL 3294367, at *3 (E.D. Cal. Aug.20, 2010) ("To constitute actual damages [under RESPA for failure to adequately respond to a QWR], the negative credit rating must itself cause damage to the plaintiff as evidenced by, for example, failing to qualify for a home mortgage. Plaintiff's conclusory statement that she suffered negative credit ratings does not itself establish actual damages."); *see also Jones v. Vericrest Fin., Inc.*, 2011 WL 7025915, at *19 (N.D. Ga. Dec. 7, 2011) (finding that even if plaintiff had sufficiently alleged that defendant violated RESPA by failing to adequately respond to a written request, RESPA claim would still be dismissed since "the Plaintiff has not included any factual allegations explaining how [defendant's] failure to provide an adequate response to the qualified written response caused her to suffer any damages"); *Phillips v. Bank of America Corp.*, 2011 WL 4844274, at *5 (N.D. Cal. Oct. 11, 2011) (dismissing plaintiff's RESPA claim because plaintiff failed to allege facts showing "that it is plausible, rather than merely possible," that the claimed damages resulted from defendant's alleged violation of RESPA).

In sum, plaintiff's RESPA claim for failure to adequately respond to the QWRs does not set forth sufficient facts to support the element of actual damages.

      2) *Statutory Damages*

To recover statutory damages, a plaintiff must plead a pattern or practice of noncompliance with RESPA. *See* 12 U.S.C. § 2605(f)(1)(b). Courts have held that RESPA pattern-or-practice damages contemplate RESPA violations with respect to other borrowers. *Renfroe v. Nationstar Mortgage*, LLC, 822 F.3d 1241, 1247 (11th Cir.2016) (citations omitted). Here, however, plaintiff's complaint is devoid of such allegations.

Furthermore, to the extent that plaintiff seeks statutory damages for defendant's pattern

or practice of noncompliance as to his own multiple requests, the court finds that this claim fails. While plaintiff sent several QWRs, they were all sent within a very short time period. Even if defendant's response were inadequate, the essentially one time refusal to provide the requested information does not plausibly show a pattern and practice of RESPA violations by defendant.

Plaintiff's complaint does not set forth a colorable claim for statutory damages as a result of defendant's alleged RESPA violation for failure to adequately respond to the QWRs.

### III. TILA and RESPA Claims for Failure to Timely Apply Payments

Plaintiff alleges broadly that defendant failed to credit plaintiff's payments promptly in violation of 12 C.F.R. §§ 1024.35, 1026.36 and 15 U.S.C. § 1639f. Regulation Z, the Consumer Finance Protection Bureau's ("CFPB") implementation of TILA, normally requires a servicer to credit a periodic payment to the consumer's loan account on the date of receipt. 12 C.F.R. § 1026.36(c)(1).[6] However, courts uniformly have held that there is no servicer liability under TILA, and, by extension, the regulations promulgated thereunder. *Lucien v. Fed. Nat. Mortgage Ass'n*, 21 F. Supp.3d 1379, 1383 (S.D. Fla.2014); *Simmons v. Aurora Bank FSB*, Civ. Action No. 13-0482, 2016 WL 192571, at *9 (N.D. Cal. Jan. 15, 2016) (only parties liable under TILA are the creditor and the creditor's assignees); *Hayes v. U.S. Bank Nat. Ass'n*, Civ. Action No. 13-80610, 2014 WL 2938534, at *3 (S.D. Fla. June 30, 2014), affirmed, 2016 WL 1593415 (11th Cir. Apr. 21, 2016) (TILA does not impose liability on servicers). Furthermore, the plain language of § 1639f does not create a private cause of action. *Barnes v. Carrington Mortgage Servs., LLC*, Civ. Action No. 15-6465, 2016 WL 3018693, at *1–2 (D. N.J. May 24, 2016). Instead, TILA's private cause of action is set forth in § 1640(a), which only imposes liability on any "creditor." *Id.*;15 U.S.C. § 1640(a).

---

[6] Plaintiff alleges that Seterus is the servicer of his loan. (Compl., ¶ 2).

Under "Regulation X," which is codified at 12 C.F.R. § 1024, a servicer must provide a timely response to a borrower's written notice of error with respect to certain enumerated issues, including, *inter alia*,

>    (1)   Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments, or

>    (2)   Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

12 C.F.R. § 1024.35.

Courts, however, are split as to whether § 1024.35 provides a private right of action for damages. *Compare Miller v. HSBC Bank U.S.A., N.A.*, Civ. Action No. 13-7500, 2015 WL 585589, at *11 (S.D. N.Y. Feb. 11, 2015) (§ 1024.35 does not provide a private cause of action for damages); *Guccione v. JPMorgan Chase Bank, N.A.*, Civ. Action No. 14-4587, 2015 WL 1968114, at *11 (N.D. Cal. May 1, 2015) (§ 1024.35 is enforceable under 12 U.S.C. § 2605(f)). Even so, plaintiff did not identify any written notice of error that he provided to Seterus, to which Seterus failed to respond. Moreover, although Payne attached a copy of an account statement to his opposition memorandum that he alleges is inaccurate, he does not explain how it is inaccurate, or that he provided Seterus with a written notice of error that contained all of the information required by § 1024.35. In short, plaintiff's complaint fails to state a claim for relief under § 1024.35.[7]

## IV.   RESPA Claim for Failure to Provide Annual Escrow Account Analysis

Plaintiff's final claim alleges that defendant failed to furnish an annual analysis of plaintiff's escrow account pursuant to 12 U.S.C. § 2609. RESPA requires a lender to provide an escrow account statement "not less than once for each 12–month period." 12 U.S.C. §

---

[7] Plaintiff's lone assertion that the statement was "inaccurate" without explaining why it was inaccurate is conclusory, and cannot survive a motion to dismiss. *Norris v. Bayview Loan Servicing, LLC*, Civ. Action NO. 15-6413, 2015 WL 6745048, at *9 (C.D. Cal. Oct. 26, 2015).

2609(c)(2)(A)-(B).  Courts have held, however, that RESPA § 2609 does not provide for a private cause of action.  *Heffron v. Green Tree Servicing, LLC*, Civ. Action No. 15-0996, 2016 WL 47915, at *4 (N.D. Ill. Jan. 5, 2016) (citation omitted).  In any event, plaintiff had not alleged that he incurred any damages on account of not directly receiving an annual escrow account statement.

**V.     Amendment**

"District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . " *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, it is conceivable that plaintiff can cure at least some of his deficient claims via amendment. Therefore, while the court will provisionally grant the motion to dismiss, entry of judgment will be deferred to accord plaintiff a 14 day period in which to seek leave to amend his complaint *(if he can in good faith do so)*, to provide the missing factual bases for any element(s) of a claim that is not precluded as a matter of law.  Defendant, of course, will have the opportunity to address the sufficiency of any proposed amendment.

## Conclusion

For the reasons provided herein,

IT IS ORDERED that defendant Seterus, Inc.'s motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 8] is provisionally GRANTED.

IT IS FURTHER ORDERED that, within the next fourteen (14) days from the date of this ruling, plaintiff may seek leave of court to file an amended complaint to redress his deficient allegations as detailed herein.  If no motion is filed within this fourteen (14) day period, then the court will enter judgment in accordance with the ruling.

In Chambers, at Monroe, Louisiana, this 26th day of August 2016.

*[Signature: Karen L. Hayes]*

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE